UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| JOHN PIPPEN, on behalf of himself and all others similarly situated, <br><br> Plaintiff, <br><br> v. <br><br> GLOBAL TECHNICAL RECRUITERS INC., *et al.*, <br><br> Defendants. | Case No. 1:21-CV-00311 <br><br> Judge J. Philip Calabrese <br><br> Magistrate Judge Thomas M. Parker |

**OPINION AND ORDER**

Plaintiff John Pippen brings this suit as a collective action under the Fair Labor Standards Act, 29 U.S.C. § 201, *et seq.* and as a class action under Rule 23. He now moves for conditional class certification under the Act, opt-in identification discovery, and Court-supervised notice to potential opt-in plaintiffs. (ECF No. 18.) Defendant Liberty Steel opposes the motion (ECF No. 22), and the parties have fully briefed the matter. For the reasons set forth below, Plaintiff's motion is **DENIED**.

**STATEMENT OF FACTS**

**A.     Alleged Violations of the Fair Labor Standards Act**

Defendant Liberty Steel is an Ohio corporation headquartered in Warren, Ohio, with operating facilities in Warren and Lordstown, Ohio. (ECF No. 1, ¶ 10, PageID #3; ECF No. 18-1, ¶ 2, PageID #106.) Liberty Steel processes coated, cold and hot rolled steel and provides a variety of stamping and blanking services. (*Id.*, ¶ 14.) Defendant Global Technical Recruiters is an Ohio corporation headquartered in

Cleveland, Ohio. (*Id.*, ¶ 9, PageID #2.) Global Technical Recruiters provides employees to Liberty Steel. (*Id.*, ¶ 14, PageID #3.)

Plaintiff John Pippen was an hourly employee at Liberty Steel in Warren between August 21, 2019 and September 26, 2019. (ECF No. 18-1, ¶ 3, PageID #106.) He was placed there by Global Technical Recruiters and worked as a laborer. (*Id.*, ¶¶ 3–4.) He alleges Defendants committed three violations of the Fair Labor Standards Act: (1) unpaid daily pre-shift meetings lasting approximately 15 to 20 minutes each day; (2) unpaid donning and doffing of personal protective gear; and (3) 15-minute pay deductions if employees clocked in or out a few minutes late or early. (*Id.*, ¶¶ 25, 28, & 30, PageID #4–5.) He alleges Defendants have a company-wide policy not to pay for compensable pre-shift work and of deducting a full 15 minutes when employees clock in or out a few minutes late or early. (*Id.*, ¶¶ 58–59, PageID #9.) According to Plaintiff, these violations resulted in Defendants' failure to pay employees overtime when they worked more than 40 hours in a workweek. (*Id.*, ¶ 32, PageID #5.)

Further, Defendants allegedly "failed to make, keep and preserve accurate records of all the hours worked by Plaintiff and other similarly situated employees, as required by the FLSA and Ohio Law." (*Id.*, ¶ 33.) Based on these allegations, Plaintiff claims Defendants violated the Fair Labor Standards Act and Ohio's overtime compensation statute.

  **B. Collective Class Allegations**

Plaintiff brings these claims on behalf of himself and other similarly situated employees of Defendants.

### B.1. Definition for the Collective Action

The complaint seeks conditional certification of the following class:

> All present and former full-time hourly employees, including but not limited to, laborers and other production employees, who are or were required to attend pre-shift meetings, don personal protective gear, who are or were subject to 15 minutes punch-time deductions, and that were employed by Defendants during the period three (3) years preceding the commencement of this action through its final disposition.

(ECF No. 1, ¶ 41, PageID #6.) Plaintiff's motion for conditional certification defines the collective action class differently:

> All present and former full-time hourly employees, including but not limited to, laborers and other production employees, who are or were required to attend pre-shift meeting *and/or* don personal protective gear *and/or* who are or were subject to 15 minute punch-time deductions, and that were employed by Defendants during the period of February 5, 2018 through final resolution of this matter.

(ECF No. 18, PageID #97 (emphasis added).) Plaintiff requests conditional certification for yet another class in his reply brief:

> All present and former full-time hourly assemblers, crane operators, general laborers, grinders, helpers, inspectors, material handlers, operators, press helpers, press operators, quality controllers, quality inspectors, robot operators, robotic operators, shipping and receiving, spot welders, tow motor drivers, tow motor operators, and welders, that worked at Defendant LSI during the period of February 5, 2018 through final resolution of this matter.

(ECF No. 23, PageID #193.) Following certification of the latter class, Plaintiff requests that the form providing consent to join a collective action incorporate questions asking whether the employee was (1) paid for time spent donning personal protective gear, including sleeves; (2) paid for time spent attending huddle meetings; and (3) subject to 15-minute deductions for clocking in or out by just a few minutes late or early. (*Id.*)

3

Under any class definition, Plaintiff asserts the defined class is similarly situated to him because they "all were subjected to and injured by Defendants' unlawful practices of failing to pay them all overtime hours worked." (*Id.*, ¶ 42.) He estimates the collective class includes approximately 100 employees. (*Id.*, ¶ 45, PageID #7.)

### B.2. Plaintiff's Evidence

Plaintiff submitted his own declaration with his motion for conditional certification and declarations from three other employees. Mr. Pippen declares he was a laborer and that he "and other hourly employees like me were required to come into work early to attend daily pre-shift meetings lasting 15 to 20 minutes" and "to put on our personal protective gear, including Kevlar sleeves, before our shift started." (ECF No. 18-1, ¶¶ 5–6, PageID #106.) Further, he declares employees "cannot start our shift or do the jobs we were hired to do without first attending the meetings to get work assignments or without putting on our protective gear." (*Id.*, ¶ 7, PageID #107.)

The other three declarations are largely identical, except for the declarant's job title and employment location. Alonzo Bonner worked at the Warren location and was a forklift operator. (*Id.*, ¶¶ 3–4, PageID #109.) Darren Pierce worked at the Warren and Lordstown locations as a laborer. (*Id.*, ¶¶ 3–4, PageID #110.) Unlike the other declarants, Mr. Pierce was placed at Liberty Steel by staffing agencies Minute Man and Labor Max. (*Id.*, ¶ 3.) Anthony Alexander was a laborer and press operator at both the Warren and Lordstown locations. (*Id.*, ¶¶ 3–4, PageID #112.) Like Mr. Pippen, the only protective gear these declarants specifically identify they

4

must don is Kevlar sleeves. (*Id.*, ¶ 6, PageID #106; ¶ 6, PageID #108; ¶ 6, PageID #110.)

### B.3. Liberty Steel's Evidence

Liberty Steel submitted several declarations in connection with its opposition to conditional certification. (ECF No. 22-1 & 22-2.) First is the declaration of Lisa Zavara, who is the manager of human resources at Liberty Steel. (ECF No. 22-1, ¶ 3, PageID #143.) According to Ms. Zavara, third-party agencies, including Global Technical Recruiting, provide between 35 and 65 temporary employees to work at Liberty Steel's two Ohio facilities. (*Id.*, ¶ 5.) All hourly employees must wear some form of personal protective equipment, but the amount and type vary based on the employee's job title and duties and facility location. (*Id.*, ¶ 8, PageID #144.) She further declares that Liberty Steel does not require any employees to attend pre-shift meetings before clocking in, although it does hold daily "huddle meetings" that start several minutes after the shift's scheduled start time. (*Id.*, ¶ 11, PageID #145.) Also, she declares Liberty Steel cannot provide a list of employees subject to 15-minute time deductions because there is no company-wide policy regarding 15-minute punch time deductions. (*Id.*, ¶ 12.)

The remaining seven declarations are from supervisors at both facilities. The supervisors state that huddle meetings are conducted after employees are clocked in and have begun their shift. (ECF No. 22-2, ¶ 7, PageID #149; ¶ 7, PageID #154; ¶ 7, PageID #159; ¶ 8, PageID #164; ¶ 7, PageID #169; ¶ 7, PageID #174; ¶¶ 6–7, PageID #179.) Employees at the Warren location who work as general laborers must wear steel-toed shoes, long sleeves, a hard hat, ear plugs, gloves, and safety glasses. (*Id.*

5

¶ 9, PageID #160.) Press helpers, press operators, quality inspectors, material handlers, tow motor drivers, spot welders, and crane operators at the Warren facility wear the same protective gear. (*Id.*, ¶¶ 4 & 9, Page ID #148 & 149; ¶¶ 4 & 9, PageID #153 & 155; ¶¶ 4 & 12, PageID #163 & 165.) Welders, grinders, operators, robot operators, and off loaders at the Warren facility must don steel-toed shoes, sleeves, a hard hat, ear plugs, gloves, safety glasses, and safety shields. (*Id.*, ¶¶ 9–10, PageID #169; ¶ 9, PageID #174–5.) The supervisors all state that employees wear their steel-toed shoes to the huddle meeting and estimate that it takes one to five minutes to don the required protective gear. (*Id.*, ¶ 10, PageID #150; ¶ 10, PageID #155; ¶ 10, PageID #160; ¶ 13, PageID #165; ¶ 10, PageID #170; ¶ 10, PageID #175; ¶ 9, PageID #179.)

Employees at the Lordstown location are also paid for daily huddle meetings, which always begin after the scheduled shift. (*Id.*, ¶ 6, PageID #179.) The Lordstown employees must wear steel-toed shoes, sleeves, ear plugs, gloves, and safety glasses, but not hard hats. (*Id.*, ¶ 8.) The Lordstown supervisor estimates it would take not more than two minutes to put on the protective equipment, excluding the shoes, which employees usually wear to work. (*Id.*, ¶ 9.) Regardless of location, all supervisors declared that Liberty Steel does not have a company-wide policy requiring employees to attend pre-shift meetings and that they do not ask employees to work if they are not clocked in. (*Id.*, ¶¶ 17–18, PageID #161; 20–21, PageID #166; 17–18, PageID #171; ¶¶ 17–18, PageID #176; ¶¶ 15–16, PageID #180.)

6

## STATEMENT OF THE CASE

Plaintiff filed this action on February 2, 2021 and moved for conditional certification on April 18, 2021 (ECF No. 18). Global Technical Recruiters did not respond to Plaintiff's motion for conditional certification. Liberty Steel opposes Plaintiff's motion. (ECF No. 22.) Liberty Steel raises three main issues with Plaintiff's request for conditional certification. First, Liberty Steel argues Plaintiff's class definition proposed in the motion concedes class members are not similarly situated. (*Id.*, PageID #126.) Second, Liberty Steel maintains that the proposed class is individualized and unmanageable because all hourly employees don protective gear and that the time it takes to don the protective gear is *de minimis*. (*Id.*) Third, Liberty Steel maintains the alleged policies related to unpaid meetings and time-punch deductions do not exist and therefore cannot be the basis for a collective class. (*Id.*, PageID #138–39)

## LEGAL STANDARD

"The Fair Labor Standards Act requires employers to pay overtime to most employees who work more than 40 hours a week." *Pierce v. Wyndham Vacation Resorts, Inc.*, 922 F.3d 741, 745 (6th Cir. 2019) (citing 29 U.S.C. § 207(a)(1)). When employers do not comply with its requirements, the Act authorizes collective actions "by any one or more employees for and on behalf of himself or themselves and other employees similarly situated." 29 U.S.C. § 216(b). Where a court certifies a collective action, other employees who seek to join the collective class must opt into the litigation by filing a written consent with the court. *Id.*

Before a collective class may be certified, the lead plaintiffs must show "that the proposed class members are similarly situated" to them. *Fortney v. Walmart, Inc.*, No. 2:19-cv-4209, 2021 WL 221996, at *2 (S.D. Ohio Jan. 22, 2021) (quoting *Casarez v. Producers Serv. Corp.*, No. 2:17-cv-1086, 2018 WL 2389721, at *2 (S.D. Ohio May 25, 2018)). Whether the plaintiff has identified similarly situated class members is determined in two phases that are governed by two different standards. *Comer v. Wal-Mart Stores, Inc.*, 454 F.3d 544, 546 (6th Cir. 2006). First is conditional certification, which is conducted at the start of discovery. *Id.* Second is final certification, which is conducted after discovery concludes. *Id.* If conditional certification is granted, defendants may move for decertification after discovery. *O'Brien v. Ed Donnelly Enters., Inc.*, 575 F.3d 567, 583 (6th Cir. 2009), *abrogated in part on other grounds*, *Campbell-Ewald Co. v. Gomez*, 577 U.S. 153, 160, 165–66 (2016).

This lawsuit is in the early stages, and Plaintiff seeks conditional certification. The purpose of conditional certification is "to provide notice and opportunity to opt in" to the lawsuit. *Smith v. Lowe's Home Ctrs., Inc.*, 236 F.R.D. 354, 357 (S.D. Ohio 2006). At the conditional phase, the plaintiff need only make "a modest factual showing" that "his position is similar, not identical, to the positions held by the putative class members." *Comer*, 454 F.3d at 546–47. Conditional certification does not permit the Court to examine the merits of the case. *Barker v. Stark Cnty.*, No. 5:19CV276, 2020 WL 1288807, at *2 (N.D. Ohio Mar. 18, 2020) (citing *Creely v. HCR ManorCare, Inc.*, 789 F. Supp. 2d 819, 826 (N.D. Ohio 2011)). In contrast to

8

final certification, the standard for conditional certification is "fairly lenient . . . and typically results in conditional certification of a representative class." *Comer*, 454 F.3d at 547.

Although the Sixth Circuit has not spoken on the issue, most district courts within this Circuit "have held that plaintiff's evidence on a motion for conditional certification need not meet the same evidentiary standards applicable to motions for summary judgment because to require more at this stage of litigation would defeat the purpose of the two-stage analysis under Section 216(b)." *Waggoner v. U.S. Bancorp*, 110 F. Supp. 3d 759, 770 n.6 (N.D. Ohio 2015) (quoting *Monroe v. FTS USA, LLC*, 257 F.R.D. 634, 639 (W.D. Tenn. 2009)) (cleaned up). This is because "[a] conditional certification action occurs at the outset of discovery, not at the close of discovery, and therefore the admissible evidence standard for summary judgment motions should not apply." *Id.* at 247 (citations omitted). Accordingly, evidence that others are similarly situated to the lead plaintiff need not be admissible at this preliminary phase. *Jesiek v. Fire Pros, Inc.*, 275 F.R.D. 242, 246 (W.D. Mich. 2011) (considering potential hearsay in the plaintiffs' declarations on conditional certification).

Finally, the Court must "refrain from weighing Defendants' competing evidence at this juncture" where doing so "would require credibility and factual determinations improper at the conditional certification stage." *Hamm v. Southern Ohio Med. Ctr.*, 275 F. Supp. 3d 863, 876 & 878 (S.D. Ohio 2017) (citations omitted); *see also Murton v. Measurecomp, LLC*, No. 1:07CV3127, 2008 WL 5725631, at *4

9

(N.D. Ohio June 9, 2008) ("Generally, courts have left assessment of disparate factual and employment settings of individual class members to the second stage of the analysis.").

Against this backdrop, the Court considers whether to grant Plaintiff's motion for conditional certification.

## ANALYSIS

Plaintiff's request for conditional certification depends on whether there is sufficient evidence, at this preliminary stage, that he is similarly situated to other employees. The "similarly situated" inquiry under the Fair Labor Standards Act is less stringent than the class certification requirements under Rule 23. *O'Brien*, 575 F.3d at 584–85. The Act does not define "similarly situated," but the Sixth Circuit has provided some guidance on what the term means. It holds "plaintiffs are similarly situated when they suffer from a single, FLSA-violating policy, and when proof of that policy or of conduct in conformity with that policy proves a violation as to all the plaintiffs." *O'Brien*, 575 F.3d at 585. In addition, employees may be similarly situated if their claims are "unified by common theories of defendants' statutory violations, even if the proofs of these theories are inevitably individualized and distinct." *Id.*

Liberty Steel first argues Plaintiff's collective definition concedes that the members are not similarly situated. (ECF No. 22, PageID #131–32.) It points out that Plaintiff's complaint defined the collective as employees who (1) attend pre-shift meetings; (2) don protective gear; and (3) are subject to 15-minute punch-time deductions. But Plaintiff's motion for conditional certification defined the class as

10

employees who meet any one or combination of those characteristics. Plaintiff's reply proposed yet another variation of the class definitions. According to Liberty Steel, the disjunctive class definition set forth in Plaintiff's motion is *per se* evidence that the collective is not similarly situated because it admits not every member of the collective is subject to the same alleged violations. The Court declines to adopt Liberty Steel's semantic arguments. But the Court otherwise finds Plaintiff has failed to meet his burden for certification of a collective action on all three violations alleged.

### I. Donning and Doffing

Liberty Steel argues conditional certification is not appropriate with respect to the donning and doffing claim because Plaintiff's collective definition is not limited by job title or job duty. (ECF No. 22, PageID #133–34.) It argues that differences in job duties defeats conditional certification because Plaintiff has failed to show that each collective members' donning and doffing of personal protective equipment is integral and indispensable to their duties. (ECF No. 22, PageID #134.)

Employers need not compensate employees for activities that are preliminary or postliminary to the employee's principal activities. *Integrity Staffing Sols., Inc. v. Busk*, 574 U.S. 27, 32 (2014) (citing 29 U.S.C. § 254(a).) The Supreme Court "has consistently interpreted the term 'principal activity or activities' to embrace all activities which are an integral and indispensable part of the principal activities." *Id.* at 33 (cleaned up). "[A]n activity is integral and indispensable to the principal activities that an employee is employed to perform . . . if it is an intrinsic element of those activities and one with which the employee cannot dispense if he is to perform

11

his principal activities." *Id.* at 37. The determination does not depend on whether an employer required a particular preliminary or postliminary activity. *Id.* at 36. Rather, the inquiry focuses on "the productive work the employee is employed to perform." *Id.*

Plaintiffs submitted declarations from a laborer at the Warren location (ECF No. 18-1, ¶¶ 3–4, PageID #106), a forklift operator at the Warren location (*id.*, ¶¶ 3–4, PageID #108), a general laborer at the Warren and Lordstown locations (*id.*, ¶¶ 3–4, PageID #110), and a laborer and press operator at the Warren and Lordstown locations (*id.*, ¶¶ 3–4, PageID #112). These declarants state employees must don protective equipment, including Kevlar sleeves. (*See, e.g.*, (ECF No. 18-1, ¶¶ 5–6, PageID #106.) Liberty Steel's declarations do not conflict with those of Plaintiffs, but add the further detail that there is some variety in the amount and type of protective gear required depending on the employee's job title and duty. For example, hard hats are required at the Warren location, but not the Lordstown location. (ECF No. 22-1, ¶ 8, PageID #144.)

Plaintiff's motion states that donning protective gear was "necessary, indispensable, integral, and intrinsic to the jobs that the Class Members were hired to do . . . ." (ECF No. 18, PageID #102.) Otherwise, neither Plaintiff nor the declarants describe their job duties or explain how donning and doffing protective equipment is integral and indispensable to their job duties.

Liberty Steel directs the Court to *Duncan-Watts v. Nestle USA, Inc.*, No. 1:19 CV 01437, 2020 U.S. Dist. LEXIS 18638, 2020 WL 589041 (N.D. Ohio Feb. 5, 2020),

which dealt with a similar situation. In *Duncan-Watts*, the court declined to grant conditional certification where the plaintiff and potential opt-in plaintiffs, who worked in a food-packing plant, failed to "describe what they do in the course of their employment with defendants." *Id.* at *3. The Court reasoned that merely alleging employees had to don and doff protective sanitary equipment was not sufficient to establish a common theory of liability without any explanation regarding the employees' principal job duties. *Id.* at *4.

Similar to *Duncan-Watts*, although Plaintiff and declarants provide their job titles and declare they are required to don Kevlar sleeves, they do not provide any evidence to permit the Court to determine whether the required donning and doffing is integral and indispensable to their duties and, therefore, compensable under the Act. Plaintiff and the other declarants have different job titles, different supervisors, work at different locations, and are required to wear different types of protective equipment. Plaintiff and the declarants state they are each required to wear Kevlar sleeves, but the record shows they are also required to wear additional types of protection that differ based on their duties and job location. Because the donning and doffing violations, if any, will vary based on job title, duties, and location, Plaintiff has not shown proposed collective members are subject to a common policy or uniform theory regarding the amount and type of protective gear they must wear. The Court declines to grant conditional certification for the donning and doffing class under these circumstances. Accordingly, the Court need not consider the parties' respective

13

arguments regarding the propriety of certification of a collective action on the donning and doffing claims and expresses no opinion on them.

## II. Pre-Shift Meetings

Plaintiff and declarants represent laborers at both plant locations, a forklift operator at the Warren plant, and a press operator at both plants. (ECF No. 18-1, ¶¶ 3–4, PageID #106, 108, 110, & 112.) In support of Plaintiff's claim regarding pre-shift meetings, the employees' declarations recite, "I and other hourly employees like me were required to come into work early to attend daily pre-shift meetings lasting approximately 15 to 20 minutes." (*Id.*, ¶ 5.) Plaintiff and declarants further state they know other hourly employees at both Liberty Steel locations have experienced similar violations by "observing others, working alongside others, and communicating with other hourly employees that engage in the same work activities that I performed." (ECF No. 18-1, ¶ 13, PageID #107 ,109, 111, &113.)

Liberty Steel insists, however, that the alleged pre-shift meetings do not occur. Its supervisors state that daily meetings occur after the shift starts and that all employees are paid for that time. (*See, e.g.*, ECF No. 22-2, ¶ 7, PageID #149.) Further, that "LSI does not have a company-wide policy that requires anyone to attend a pre-shift meeting before they are clocked in. Everyone is clocked in by the time they are at the huddle meeting." (*See, e.g.*, *id.*, ¶ 17, PageID #151.)

Without making a merits determination or weighing credibility of the evidence, the Court finds Plaintiff has not shown that he and other hourly employees "suffer from a single, FLSA-violating policy" with respect to the alleged unpaid, pre-shift meetings. *O'Brien*, 575 F.3d at 585. Plaintiff's only proof of such a policy is the nearly

14

identical declarations of four Liberty Steel employees with different job titles at different locations stating they are required to attend pre-shift meetings for which they are not paid. These conclusory statements are not sufficient evidence of a company-wide policy of requiring attendance for unpaid, pre-shift meetings. Plaintiff has not pointed to any handbook or explicit policy that authorizes unpaid, pre-shift meetings, and Liberty Steel flatly contradicts the existence of any such policy or practice with multiple declarations from various managers whose statements foreclose certification of a collective action under any definition Plaintiff proposes. Again, Plaintiff has not carried his burden, light though it may be, of establishing that the plaintiffs are similarly situated.

### III. Time-Punch Deductions

Finally, Plaintiff has not met his burden of showing a company-wide policy of 15-minute time-punch deductions. Plaintiff and declarants state, "if we clocked in late or clocked out early by as little as one to few minutes, a full 15 minutes was docked from our pay." (*See, e.g.*, ECF No. 18-1, ¶ 9, PageID #107.) They claim plant managers "knew or should have known . . . that 15-minutes were being deducted as described above." (*See, e.g.*, *id.*, ¶ 12.) Again, however, Plaintiff's conclusory statements are not evidence of a company-wide policy. Moreover, Liberty Steel maintains "[n]o company-wide policy exists regarding 15 minute punch time deductions" and that "[n]o location-specific policy exists regarding 15 minute punch time deductions." (ECF No. 22-1, ¶ 12, PageID #145.)

Further, at this stage of the proceedings, the record does not support a determination that Plaintiff and declarants are similarly situated to hourly

15

employees who worked in different positions. Therefore, the Court finds that Plaintiff has not met his burden of showing he is similarly situated to other hourly employees with respect to the alleged time-punch deductions.

* * *

In sum, Plaintiff has failed to provide sufficient evidence to meet his fairly lenient burden of showing he is similarly situated to Liberty Steel's current and former employees. Therefore, the Court finds conditional certification is not appropriate.

### IV. Conditional Certification against Global Technical Recruiters

Finally, a word about Global Technical Recruiters, against which Plaintiff also seeks conditional certification. Although Global Technical Recruiters did not oppose Plaintiff's motion for conditional certification, the burden is on Plaintiff to make some factual showing he is similarly situated to the other employees he seeks to notify. *Waggoner*, 110 F. Supp. 3d at 764. To the extent Plaintiff has failed to do so against Liberty Steel, he has also failed to do so against Global Technical Recruiters.

Further, the record provides no basis to grant conditional certification as to Global Technical Recruiters for the alleged violations and the Court declines to do so. At this stage, the record shows that Global Technical Recruiters did not employ or pay anyone. Nor did they even arguably engage in a practice that resulted in underpayment or nonpayment. Additionally, the various declarations Plaintiff relies on include one from an employee who used a different recruiter to land at Liberty Steel. (ECF No. 18-1, ¶ 3, PageID #110.) A collective action cannot proceed against Global Technical Recruiter on this record.

## CONCLUSION

For the reasons stated above, the Court **DENIES** Plaintiff's request for conditional certification. (ECF No. 18.)

**SO ORDERED.**

Dated: June 15, 2021

J. Philip Calabrese
United States District Judge
Northern District of Ohio